## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| **WINSTAR COMMUNICATIONS, INC.,** | : | Case Nos. 01-1430 (KJC) |
| *et al.,* | : | (Jointly Administered) |
| Debtors. | : | |

---

| | | |
|---|---|---|
| | : | |
| **WINSTAR HOLDINGS, LLC, and** | : | |
| **IDT CORP.,** | : | Adversary Proceeding No. |
| Plaintiffs, | : | 08-50296 (KJC) |
| | : | |
| v. | : | |
| | : | |
| **THE BLACKSTONE GROUP, LP,** | : | |
| **IMPALA PARTNERS, LLC, AND** | : | |
| **CITICORP,** | : | |

## MEMORANDUM[1]

## BY:   KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

### Background.

This adversary proceeding arises out of a sale of assets pursuant to Bankruptcy Code

section 363 by the debtor, Winstar Communications, Inc., and its related entities (the "Debtors" or

"Old Winstar") to Winstar Holdings, LLC ("New Winstar") and IDT Corporation ("IDT")(jointly,

the "Plaintiffs").  At an auction held on December 5, 2005, the Plaintiffs' bid was identified as the

highest and best offer for the assets.  The Debtors and the Plaintiffs entered into an Asset Purchase

Agreement dated as of December 18, 2001 (the "APA"), which was approved by an Order dated

December 19, 2001 (see main case D.I. 1627).  The parties completed closing immediately

---

[1]This Court has jurisdiction to decide the motions before it pursuant to 28 U.S.C. § 1334 and
§157(a).

thereafter and the Plaintiffs purchased the assets for $42.5 million.  (the "Asset Sale")

On May 10, 2007, more than five years after closing, the Plaintiffs filed a complaint in the Supreme Court of New York (the "New York State Court") against The Blackstone Group, LP ("Blackstone"), Impala Partners ("Impala"), and Citicorp, Inc. ("Citicorp") (collectively, the "Defendants") for their roles in connection with the Asset Sale.  During the Debtors' chapter 11 case, the Bankruptcy Court authorized the employment of Blackstone as the financial advisor to the Debtors, and Impala as the restructuring advisor to the Debtors. Citicorp was the largest creditor of the Debtors and the Plaintiffs allege that Impala's actions in connection with the Asset Sale are attributable to Citicorp because Impala was working as Citicorp's agent.  In the complaint, the Plaintiffs asserted five claims against the Defendants arising from the Asset Sale: fraud (Count 1), aiding and abetting fraud (Count 2), negligent misrepresentation (Count 3), negligence (Count 4), and civil conspiracy (count 5).

On June 1, 2007, Impala removed the action to the United States District Court for the Southern District of New York ("New York District Court") pursuant to 28 U.S.C. § 1452(a).  On June 21, 2007, the Defendants filed a joint motion requesting that the New York District Court transfer venue to this Court pursuant to 28 U.S.C. §§ 1404(a) or 1406 (discretionary transfer and mandatory transfer, respectively).  On July 1, 2007, the Plaintiffs challenged the removal by filing a motion to remand the action back to the New York State Court, arguing that removal was improper under 28 U.S.C. §§ 1334 and 1452(a) because subject matter jurisdiction was lacking. Alternatively, the Plaintiffs contended that the New York District Court should abstain from hearing the action under 28 U.S.C. §1334(c)(1) and (2), or should equitably remand the case under 28 U.S.C. §1452(b).

On December 10, 2007, the New York District Court denied the Plaintiffs' request for

remand or abstention, granted Defendant's request to transfer venue of the action, and transferred

the case to the United States District Court for the District of Delaware (the "Delaware District

Court"). The New York District Court determined that federal jurisdiction was appropriate

because the Plaintiffs' claims "arose in" the Old Winstar bankruptcy case. Further, the New York

District Court held that mandatory abstention was inapplicable, that permissive abstention and

equitable remand were not appropriate, and that venue properly lay in Delaware. *Winstar*

*Holdings, LLC v. The Blackstone Group, LP*, 2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007).

The action was transferred to the Delaware District Court on December 17, 2007. On

January 29, 2008, the Defendants filed a joint motion to refer the action to this Court, which was

granted on February 19, 2008. After the action was transferred, the following motions were

transferred to this Court's docket:

(1)     Defendant The Blackstone Group, LP's Motion to Dismiss Plaintiffs' Complaint
        (*see* D.I. 7, attachment 8) (the "Blackstone Motion"),

(2)     Defendant Impala Partners, LLC's Motion for Judgment on the Pleadings Pursuant
        to Rule 12(c) (*see* D.I. 7) (the "Impala Motion"), and

(3)     Defendant Citigroup, Inc.'s Motion to Dismiss Plaintiffs' Complaint (*see* D.I. 7,
        attachment 2) (the "Citigroup Motion").

In its motion to dismiss, Blackstone argues that the Complaint fails to state a claim upon

which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6), made applicable by Fed.R.Bankr.P.

7012(b), for three reasons: (1) the claims are time barred under the applicable statute of

limitations; (2) the claims constitute an impermissible collateral attack on the final and binding

court order which authorized and approved the Asset Sale; and (3) the claims are barred as a

3

matter of law by the broad disclaimer clause in the APA.  Moreover, Blackstone argues that

Counts 1, 2, and 5 fail to allege fraud with the required particularity.  The Impala Motion and the

Citigroup Motion join in and adopt all of the points advanced by Blackstone. (Collectively, the

Court will refer to the Blackstone Motion, the Citigroup Motion, and the Impala Motion as the

"Motions to Dismiss.").

On March 14, 2008, Plaintiffs filed a motion requesting remand or abstention (D.I. 22)

("Motion For Remand or Abstention") with this Court.  Plaintiffs argue that the New York

District Court erroneously concluded that Plaintiffs' claims "arise in" Old Winstar's bankruptcy

case.  The Plaintiffs, still seeking to have the action remanded to the New York State Court, renew

their argument that bankruptcy court jurisdiction is lacking, and ask this Court to review the

jurisdiction question under applicable Third Circuit law.

For the reasons set forth below, the Court denies Plaintiffs' Motion For Remand or

Abstention and grants the Defendants' Motions to Dismiss.

<u>Factual Allegations</u>

For the purpose of ruling on the pending motions, the Court takes the following facts

alleged in the Plaintiffs' Complaint (*see* D.I. 2, attachment 3) to be true.

Old Winstar was a publicly traded company that provided telephone services to customers

using a "fixed wireless" system.  On April 18, 2001, the Debtors filed voluntary petitions for relief

under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of

Delaware.  On January 24, 2002, the Court entered an order converting the chapter 11 cases to

chapter 7 cases.  The bankruptcy cases remain pending before this Court.

Blackstone, Impala, and Citigroup's Role in Old Winstar's Asset Sale.

The Debtors retained Blackstone as a financial advisor to market and sell their business assets. The Debtors also retained Impala as a restructuring advisor to provide them with restructuring advice and other related services in connection with the bankruptcy proceedings. As the Debtors' largest creditor, Citigroup assisted the Debtors in negotiating the terms of Impala's engagement.

The auction of the Debtors' business assets was planned for December 2001. To promote the sale of the Debtors' business assets, Blackstone, assisted by Impala, prepared an offering statement . Blackstone, Impala, and Citicorp assisted in the development of financial data and presentations to the Debtors' Board of Directors, various creditors, and other parties. Blackstone also performed various analyses, including cash reconciliation of the Debtors' actual performance versus various sets of projections. Blackstone, Impala, and Citicorp controlled bidder access to the Debtors' staff and records.

IDT was one of several entities that expressed an interest in acquiring the Debtors' business assets. In conducting due diligence, IDT met with Blackstone and several of the Debtors' officials and reviewed the Debtors' business records, which were made available in a "data room." The meetings were held and the data room was located in New York City. The due diligence was conducted between Friday, November 30, 2001 and Wednesday, December 5, 2001.

During the due diligence period, Blackstone, Impala, and the Debtors each made material misrepresentations to IDT regarding the status of the Debtors' business, including statements about monthly revenue, the number of paying customers, the number of revenue-generating telephone lines, the rate at which existing customers discontinued service, and the Debtors' use of

5

an intercity optical network built by Lucent. Furthermore, Blackstone, Citicorp, Impala, and the Debtors hid or blocked IDT's access to material information about the Debtors' finances and operations.

The Auction, Sale Order, and Asset Purchase Agreement.

Following the due diligence period, IDT established New Winstar for the purpose of acquiring the Debtors' business assets. The auction was conducted on December 5, 2001 and New Winstar submitted a bid for the Debtors' business assets. The Defendants did not permit further due diligence between December 5, 2001 and December 17, 2001. On December 18, 2001, IDT and New Winstar entered into the APA with the Debtors to acquire the Debtors' business assets and certain other assets for $42.5 million.

On December 19, 2001, pursuant to 11 U.S.C. §363, this Court entered an Order approving the APA (the "Sale Order," *see* main case D.I. 1627). Closing under the APA occurred on or about December 20, 2001, and New Winstar began operating with the Debtors' assets.

Shortly after acquiring the Debtors' assets, New Winstar and IDT discovered that the oral and written representations about the Debtors' operations made during due diligence period were false or contained material omissions. IDT and New Winstar would not have entered into the APA if they had known the truth. IDT and New Winstar suffered losses of over $300 million.

Plaintiffs' Motion for Remand or Abstention

In the Motion for Remand or Abstention, the Plaintiffs ask that this Court remand the action to the New York State Court, despite the fact that the New York District Court already denied a similar motion. *See Winstar Holdings, LLC v. Blackstone Grp., L.P.,* 2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007). The Defendants argue that the decision of the New York District Court

6

regarding jurisdiction is the law of the case and is binding on this Court. The Plaintiffs, however,

argue that this Court must make its own determination regarding subject matter jurisdiction under

applicable Third Circuit law. The Plaintiffs contend that the law of the case doctrine does not

apply here, because the New York District Court did not consider whether subject matter

jurisdiction was proper in the *transferee* court, as required prior to deciding to transfer the action

to Delaware pursuant to 28 U.S.C. §1404(a).[2] Alternatively, the Plaintiffs argue that an exception

to the law of the case doctrine applies here, because the New York District Court's analysis of

"arising in" and "related to" bankruptcy court jurisdiction under 28 U.S.C. §1334 was "clearly

wrong" and must be reconsidered to prevent a manifest injustice.[3]

### The Law of the Case Doctrine.

The law of the case doctrine "posits that when a court decides upon a rule of law, that

decision should continue to govern the same issues in subsequent stages in the same case. The

---

[2] 28 U.S.C. §1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division *where it might have been brought.*" (emphasis added)

The Plaintiffs rely upon the decision *Hayman Cash Register Co. v. Sarokin,* 669 F.2d 162 (3d Cir. 1982) to support their argument that the law of the case doctrine does not apply and that this Court should reconsider jurisdiction. In *Hayman,* the Third Circuit recognized that a transferee court could consider venue and jurisdiction issues *only* when those issues had not been considered by the transferor court. *Id.,* at 166. The *Hayman* Court, however, applied the law of the case doctrine to the matter before it, preventing the transferee court from considering jurisdiction anew, after finding that the transferor court previously decided that jurisdiction was proper in the transferee court.

[3] The Plaintiffs also claim that reconsideration is permissible in this Court, since the transfer of this case effectively denied them of their right to move for reconsideration in New York. Pursuant to Local Rule 83.1 of the Southern District of New York, the case was transferred five business days after the transfer order was issued. (*See* S.D.N.Y. L.R.Civ.P. 83.1 (2007)). Although the time period is short, the Plaintiffs could have sought reconsideration by Judge Lynch during the five days before the transfer. Moreover, this exception is applied predominantly to allow a successor judge to reconsider issues when the predecessor judge is unavailable, which was not the case here. *Hayman,* 669 F.2d at 169 citing *TCF Film Corp. v. Gourley,* 240 F.2d 711, 714 (3d Cir. 1957) ("[W]here a successor judge is asked by timely and proper motion to reconsider the legal conclusions of an unavailable predecessor, he or she is empowered to reconsider those issues to the same extent that his or her predecessor could have."). Plaintiffs have not demonstrated that their right to seek reconsideration by Judge Lynch was effectively denied.

rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (internal quotations omitted). "The law of the case doctrine does not limit a federal court's power; rather it directs its exercise of discretion." *Public Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997)(citations omitted). In *Christianson*, the Supreme Court explained the scope of this discretion as follows:

> A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was "clearly erroneous and would work a manifest injustice."

*Id.* at 817 quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983). The Third Circuit has recognized the following "extraordinary circumstances" that warrant a court's reconsideration of an issue decided earlier in the litigation: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice. *Public Interest Research Grp.,* 123 F.3d at 116-17.

"Federal courts routinely apply law of the case principles to transfer decisions of coordinate courts." *Christianson*, 486 U.S. at 816 (citing cases). "[T]he policies supporting the doctrine apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation." *Id. See also Public Interest Research Grp.,* 123 F.3d at 118 ("Transfer cases pose a special problem to litigants . . . . When transferee courts fail to follow the law of the case, they drive up the costs of litigation dramatically and allow parties to capitalize on jurisdictional uncertainty.").

Decision by the New York District Court

The New York District Court determined that bankruptcy court jurisdiction is proper in

this case pursuant to 11 U.S.C. §1334 (b), which provides, in pertinent part, that "the district

courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title

11, or arising in or related to cases under title 11." In *Binder v. Price Waterhouse & Co., LLP (In*

*re Resorts Int'l, Inc.)*, 372 F.3d 154 (3d Cir. 2004), the Third Circuit explained:

> Bankruptcy court jurisdiction potentially extends to four types of title 11 matters pending
> referral from the district court: (1) cases under title 11, (2) proceedings arising under title
> 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case
> under title 11. [The first three types of matters] are referred to as "core" proceedings,
> whereas proceedings "related to" a case under title 11 are referred to as "non-core"
> proceedings. Congress vested the bankruptcy courts with full adjudicative power with
> regard to "core" proceedings, subject to appellate review by the district courts. 28 U.S.C.
> §§ 157(b)(1), 158(a), (c). At the same time, it provided that, for "non-core" proceedings
> that are otherwise related to a case under title 11, the bankruptcy court "shall submit
> proposed findings of fact and conclusions of law to the district court" subject to de novo
> review by that court. 28 U.S.C. § 157.

*Resorts Int'l*, 372 F.3d at 162 (citations omitted). The New York District Court held that the

claims in this case "arise in" the Old Winstar bankruptcy case because:

> [P]laintiffs' claims go directly to the proper performance of duties by professionals
> retained by the bankruptcy estate, with the approval of the Bankruptcy Court, to
> assist it in maximizing the assets of the estate. . . . . [S]upervising the court-
> appointed professionals also bears directly on the distribution of the debtor's estate.
> If the estate is not marshaled and liquidated or reorganized expeditiously, there will
> be far less money available to pay creditors' claims. Here, of course, the claim is
> not brought by the bankruptcy estate itself, and the claim is rather that the
> professionals advising the estate obtained *excessive* compensation by defrauding
> the purchaser of the estate's assets. But the matter is still intimately related to the
> administration of the bankruptcy. The Bankruptcy Court has a vital interest in
> policing the integrity of the bankruptcy process in general, and of the sales of estate
> assets under the court's supervision in particular.

*Winstar*, 2007 WL 4323003 at *5 (internal quotation marks omitted).[4]

Because this matter is a core proceeding arising in a bankruptcy case, the New York

District Court determined that mandatory abstention under 28 U.S.C. §1334(c)(2) is not

applicable.[5]  *Id.* at *5.  Upon further analysis, the New York District Court also determined that

permissive abstention under 28 U.S.C. §1334(c)(1)[6] was not appropriate here, because (i) there

was no basis for comity to the state courts since the state law claims are straightforward common-

law claims that do not involve arcane or idiosyncratic provisions of New York law, (ii) the matter

is closely tied to the bankruptcy case since it arises out of the sale of assets that was a "central

aspect and basic function of the bankruptcy proceedings," and (iii) the Plaintiffs' claims involve

post-petition conduct that took place under the Bankruptcy Court's auspices and will involve

interpretation of the Bankruptcy Court-approved Asset Purchase Agreement and the Court's

orders.  *Id.* at *5-*6.

---

[4]In a footnote, the New York District Court also determined that "related to" bankruptcy
jurisdiction exists because the outcome of this action may affect the Debtors' rights or administration of
the estate due, in part, to Impala's indemnification rights against Old Winstar.  *Winstar*, 2007 WL
4323003 at *1 n.1.  This conclusion might be questioned under Third Circuit decisions *W.R. Grace & Co.
v. Chakarian (In re W.R. Grace & Co.)*, 591 F.3d 164 (3d Cir. 2009) and *In re Federal-Mogul Global,
Inc.*, 300 F.3d 368 (3d Cir. 2002).  However, I need not address this aspect of the Court's decision, since
the New York District Court determined that core "arising in" jurisdiction is present.

[5]28 U.S.C. §1334(c)(2) provides: "Upon timely motion of a party in a proceeding based upon a
State law claim or State law cause of action, related to a case under title 11 but not arising under title 11
or arising in a case under title 11, with respect to which an action could not have been commenced in a
court of the United States absent jurisdiction under this section, the district court shall abstain from
hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of
appropriate jurisdiction."

[6]28 U.S.C. §1334(c)(1) provides: "Except with respect to a case under chapter 15 of title 11,
nothing in this section prevents a district court in the interest of justice, or in the interest of comity with
State courts or respect for State law, from abstaining from hearing a particular proceeding arising under
title 11 or arising in or related to a case under title 11."

After deciding that this matter is a core bankruptcy proceeding and that neither mandatory nor permissive abstention is appropriate, the New York District Court considered the Defendants' motion to transfer the case to the United States District Court for the District of Delaware for referral to the Bankruptcy Court. The New York District Court decided that the mandatory choice of forum clause in the APA provides a strong basis for concluding that venue is properly laid in Delaware. *Id.* at *6. Although the Defendants were not parties to the APA, the Plaintiffs agreed to resolve any disputes related to the APA in the Delaware Bankruptcy Court and the Defendants' alleged wrongdoing was - - almost without exception - - committed jointly with the Plaintiffs' counterparty to the APA: Old Winstar.[7] *Id.* The New York District Court further decided that "even if transfer is not mandatory pursuant to 28 U.S.C. §1406, discretionary transfer under §1404(a) in the interests of justice is clearly appropriate" because the point of federal jurisdiction is the close connection of the case to the bankruptcy proceedings in Delaware. *Id.* at *7. The Court determined that the Plaintiffs' arguments about inconvenience "rang hollow" when the physical distance between the courts is a short train ride and the fact that the Plaintiffs "irrevocably waived" any objections to venue in the District of Delaware on the grounds of inconvenience. *Id.*

Application of the law of the case doctrine

This case falls squarely within the law of the case doctrine. While it is true that courts may

---

[7]Section 9.10 of the APA states: "The parties hereto irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court . . . over any dispute arising out of or relating to this Agreement or any other agreement or instrument contemplated hereby or entered into in connection herewith or any transactions contemplated hereby or thereby. Each party hereby irrevocably agrees that all proceedings may be heard and determined in such courts. The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum in connection therewith."

review the issue of subject matter jurisdiction *sua sponte* at any point in a case (*see, e.g., In re Flat Glass Antitrust Lit.*, 288 F.3d 83, 88 n.5 (3d Cir. 2002)), I can discern no reason to do so here. In *Christianson*, the Supreme Court wrote that:

> There is no reason to apply law-of-the-case principles less rigorously to transfer decisions that implicate the transferee's jurisdiction. Perpetual litigation of any issue - - jurisdictional or nonjurisdictional - - delays, and therefore threatens to deny, justice.

*Christianson*, 486 U.S. at 816 n.5. The New York District Court considered whether subject matter jurisdiction exists in a federal bankruptcy court, thoughtfully analyzing 28 U.S.C. §1334(b), applicable treatises, and decisional law from the Second and Fifth Circuits. An analysis under Third Circuit law would not change the result. *See Gerushat v. Ernst Young LLP (In re Seven Fields Dev. Corp.)*, 505 F.3d 237, 262-63 (3d Cir. 2007) (holding that a malpractice action against a court-approved professional for misconduct during the bankruptcy case was a core proceeding "arising in" the bankruptcy). The New York District Court also presented a well-reasoned abstention analysis under 28 U.S.C. §1334(c). Even if the jurisdiction and abstention issues here are considered to be close questions without clear answers, the Supreme Court in *Christianson* instructs:

> [C]ourts will rarely transfer cases over which they have clear jurisdiction, and close questions, by definition, never have clearly correct answers. Under law-of-the-case principles, if the transferee court can find the transfer decision plausible, its jurisdictional inquiry is at an end.

*Christianson*, 486 U.S. at 819. The New York District Court's decision well exceeds the standard of plausibility. It is not "clearly erroneous" and does not result in any manifest injustice, particularly because the Plaintiffs have consented to jurisdiction in this Court for any issues

12

related to the Asset Sale. The Plaintiffs' Motion for Remand or Abstention will be denied.[8]

## The Motions to Dismiss

### Standard [9]

Fed.R.Civ.P. 12(b)(6), made applicable by Fed.R.Bankr.P. 7012(b), governs a motion to

dismiss for failing to state a claim upon which relief can be granted. "The purpose of a motion to

dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits

of the case." *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Anti-Trust Litig.)*, 496 F.Supp.

2d 404, 407 (D.Del. 2007) citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In

considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept as true all

factual allegations in the complaint and draw all inferences from the facts alleged in the light most

favorable to the plaintiff. *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003).

Fed.R.Civ.P. 8(a)(2), made applicable by Fed.R.Bankr.P. 7008, requires the complaint to contain

"a short and plain statement of the claim showing that the pleader is entitled to relief," in order to

"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell*

*Atlantic Corp. v. Twombly,* 550 U.S.544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)

quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

In *Twombly*, the Supreme Court further decided that "[w]hile a complaint attacked by a

---

[8]There is yet another sound, prudential reason not to upset the New York District Court's determination: An Article III Court (a "Constitutional" court), from which bankruptcy courts directly derive their jurisdiction, has rendered its decision on issues completely within its purview. The Third Circuit's admonition that the revisiting of prior decisions should occur only under "extraordinary circumstances" is particularly applicable here. *Public Interest Research Grp.*, 123 F.3d at 116-17.

[9]The standard for a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), made applicable by Fed.R.Bankr.P. 7012(b), is the same as that applied to a motion to dismiss pursuant to Fed. R.Civ.P. 12(b), also made applicable by Fed.R.Bankr.P. 7012(b). *Shelly v. Johns-Manville Corp.*, 798 F.2d 93, 97 n.4 (3d Cir. 1986).

Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation

to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at

555, 127 S.Ct. at 1964-65. *See also Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir.

2009) quoting *Ashcroft v. Iqbal,* - - U.S. - - , 129 S.Ct. 1937, 1948-49, 173 L.Ed.2d 868

(2009)("[I]t is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to

dismiss; 'threadbare recitals of elements of a cause of action, supported by mere conclusory

statements do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient

factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.'")

<u>Statute of Limitations</u>

In the Motions to Dismiss, all of the Defendants argue that the Plaintiffs' claims are barred

by Delaware's three-year statute of limitations. *See* 10 Del. C. § 8106.[10] The Plaintiffs allege that

the Defendants' wrongful acts occurred during the due diligence period of November 30, 2001

through December 5, 2001. As a result, the APA was signed as of December 18, 2001, approved

---

[10] 10 Del. C. § 8106(a) reads:
No action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action . . . .

*See also Krahmer v. Christie's, Inc.,* 903 A.2d 773, 778 (Del. Ch. 2006) (applying §8106 to negligent misrepresentation and fraud claims); *Christiana Marine Serv. Corp. v. Texaco Fuel and Marine Marketing,* 2002 WL 1335360, *3 (Del. Super. June 13, 2002) (applying §8106 to negligence claims); and *Atlantis Plastics Corp. v. Sammons,* 558 A.2d 1062, 1064 (Del. Ch. 1989) (applying §8106 to a civil conspiracy claim).

14

by Court Order dated December 19, 2001, and the sale closed on December 20, 2001.  In the

Complaint, the Plaintiffs allege that revenues between August 1, 2001 and July 31, 2002 were

materially less than represented.  However, the Plaintiffs did not file their Complaint until May

10, 2007 - - over five years after the due diligence period and closing of the Asset Sale.  Even

assuming that discovery of the wrongful conduct occurred later (July 31, 2002), the Complaint's

filing date still falls well beyond the three-year statute of limitations period.[11]

The Plaintiffs argue that Delaware's three-year statute of limitations period is not

applicable to its claims.  Instead, the Plaintiffs argue that New York's statute of limitations should

apply,  because (i) the torts occurred in New York, (ii) the APA provides that it should be

governed by and construed in accordance with the laws of the State of New York, and (iii) special

circumstances in this case warrant the Court's application of New York - - not Delaware - -

statute of limitations law.  The New York statute of limitations for Plaintiffs' fraud, aiding and

abetting fraud, negligent misrepresentation, and civil conspiracy claims (Counts 1, 2, 3, and 5 ) is

---

[11]A cause of action accrues under §8106 at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action. *Krahmer*, 903 A.2d at 778 quoting *SmithKline Beecham Pharm. v. Merck & Co.,* 766 A.2d 442, 450 (Del. 2000).  However, Delaware courts have tolled a limitations period under the doctrines of (i) fraudulent concealment, (ii) inherent unknowable injury, and (3) equitable tolling. *Krahmer*, 903 A.2d at 778.  If one of the tolling exceptions applies, "the statute will begin to run only upon the discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery [of the injury.]" *Id.* at 778-79 quoting *Wal-Mart Stores v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004). The Plaintiffs assert that §8106 is not applicable to their claims and, consequently, have not argued that any tolling doctrine applies here.  In the Plaintiffs' Memorandum in opposition to Citigroup's Motion to Dismiss and Impala's Motion for Judgment on the Pleadings (docket no. 18), the Plaintiffs allege that "[s]hortly after its acquisition of the assets of Old Winstar, New Winstar learned that Old Winstar had inflated its reported revenue by a variety of means . . . ." (Memo. In Opp. at ¶H, p. 8).

six years. *See* N.Y. C.P.L.R. § 213(8).[12]  The New York statute of limitations for Plaintiffs'

negligence claim (Count 4) is three years. *See* N.Y. C.P.L.R. § 214(4).[13]  Therefore, Count 4 must

be dismissed whether the Delaware or New York limitations period applies.

This Court must apply the Delaware choice of law rules to determine whether the

Delaware or New York statute of limitations applies to this adversary. *Burtch v. Dent (In re*

*Circle Y of Yoakum, Texas)*, 354 B.R. 349, 359 (Bankr.D.Del. 2006) citing *In re PHP Healthcare*

*Corp.*, 128 Fed. Appx. 839, 843 (3d Cir. 2005)(applying the choice of law rules of the state in

which the bankruptcy court sits).  The Plaintiffs contend that Delaware is a *lex loci delecti*

jurisdiction, *i.e.*, it will apply the substantive law of the state where the tort or injury occurred.

*Dymond v. Nat'l Broadcasting Co., Inc.*, 559 F.Supp. 734, 737 (D.Del. 1983).  However, for

conflict of law purposes, a statute of limitations issue is a procedural, not substantive. *Norman v.*

---

[12]N.Y. C.P.L.R. § 213(8) provides:
The following actions must be commenced within six years:
. . .
(8)      an action based upon fraud; the time within which the action must be commenced shall
         be the greater of six years from the date the cause of action accrued or two years from
         the time the plaintiff or the person under whom the plaintiff claims discovered the fraud,
         or could with reasonable diligence have discovered it.

*See also Brady v. Lynes*, 2008 WL 2276518, *8-*9 (S.D.N.Y.  June 2, 2008) (noting that the
limitations period for fraud and civil conspiracy claims is the greater of six years from the date the cause
of action accrues or two years from the time the plaintiff could have discovered the fraud, and the
limitations period for claims of negligent misrepresentation is six years from the date of the alleged
injury).

[13]N.Y. C.P.L.R. §214(4) provides:
The following actions must be commenced within three years:
. . . .
(4)      an action to recover damages for an injury to property . . . .

*See also Triangle Underwriters, Inc. v. Honeywell Info. Sys. Inc.*, 604 F.2d 737, 744 (2d. Cir.
1979) ("The statute of limitations in New York for negligence claims is three years. . . . A cause of action
accrues when acts or omissions constituting negligence produce injury.")

16

*Elkin*, 2007 WL 2822798, *3 (D.Del. Sept. 26, 2007).  Therefore, the law of the forum generally

determines whether an action is barred by the statute of limitations.  *Juran v. Bron,* 2000 WL

1521478, *10 (Del.Ch. Oct. 6, 2000) citing *Restatement (Second) Conflict of Laws*, §142.  The

Delaware Legislature modified this general rule by enacting a "borrowing statute," which

provides, in pertinent part:

> Where a cause of action arises outside of this State, an action cannot be brought in
> a court of this State to enforce such cause of action after the expiration of
> whichever is shorter, the time limited by the law of this State, or the time limited
> by the law of the state or country where the cause of action arose, for bringing an
> action upon such cause of action.

10 Del.C. §1821.  Even assuming, without deciding, that the Plaintiffs' cause of action arose in

New York, the borrowing statute requires the Court to apply the *shorter* statute of limitations and,

therefore, Delaware's three-year limitations would apply here.

The Plaintiffs also argue that this Court should apply the New York statute of limitations

based upon the choice of law provision in the APA, which provides:

> This Agreement shall be governed by and construed in accordance with the laws of
> the State of New York (regardless of the laws that might otherwise govern under
> applicable New York principles of conflicts of law) as to all matters, including but
> not limited to matters of validity, construction, effect, performance and remedies.

Asset Purchase Agreement, §9.9.  Delaware courts have decided that, while choice of law

provisions will be given effect, those provisions will only include the statute of limitations of the

chosen jurisdiction if the inclusion is specifically noted.  *Juran,* 2000 WL 1521478 at *11;

*American Energy Tech., Inc. v. Colley & McCoy Co.*, 1999 WL 301648, *2 (D.Del. Apr. 15,

1999).

The Plaintiffs further argue that special circumstances in this case should persuade this Court to reject application of Delaware's three-year limitations period to this action. The Plaintiffs rely upon the *Juran* decision, in which the court determined that the matter before it presented "special or unusual circumstances where it would be inequitable to apply the statute of limitations law" and, therefore, the court, acting as a Court of Equity, should be guided by the equitable doctrine of laches. *Juran*, 2000 WL 1521478 at *11. The *Juran* Court decided that the cause of action in the matter before it arose in California because all of the parties resided in California, the contract was signed and performed in California, the breach of contract occurred in California, and the contract specified that it was subject to California law. *Id.* The possible limitations periods for the *Juran* cause of action ranged from one year (Delaware) to four years (California). *Id.* at 12. The plaintiffs brought the action about two years after the injury occurred, and the *Juran* Court decided that the claims were not barred by laches. *Id.* The Court concluded that the plaintiffs did not sit on their rights and that the defendants had not shown any prejudice caused by the delay. *Id.*

Moreover, the *Juran* Court decided that the policy behind the Delaware borrowing statute was consistent with its decision. *Id.* The *Juran* Court noted that Delaware's borrowing statute was designed to protect Delaware courts from adjudicating stale out-of-state claims. *Id.* However, because the plaintiffs filed in a jurisdiction with a shorter, rather than longer, limitations period, there was no danger of forum shopping. *Id.*

The Plaintiffs in this adversary proceeding argue that the circumstances here are similar to those in *Juran*. They claim that all of the parties' principal offices are located in New York , and the due diligence activities and injuries arising therefrom, occurred in New York. The Plaintiffs

18

claim that the site of the bankruptcy case is not relevant here, because neither the Debtors nor

their estates were harmed by the Defendants' wrongful conduct.  Further, the Plaintiffs argue that

the policy behind the Delaware borrowing statute does not apply here, because there is no danger

that the Plaintiffs were forum shopping, since the Plaintiffs sought to file this case in New York.

The matter before this Court does not exhibit any of the "special circumstances" present in

*Juran*, because the  underlying facts are not tied solely to New York.  The due diligence

performed in this case was done as part of the sale process approved by this Bankruptcy Court,

using professionals employed with the approval of this Bankruptcy Court.  The Asset Sale under

Bankruptcy Code §363 was an integral part of the Debtors' Delaware bankruptcy case.  It has

been determined that jurisdiction and venue are  proper in this Court.  The Delaware statute of

limitations applies to the Plaintiffs' Complaint.  Accordingly, the Motions to Dismiss will be

granted, since the Plaintiffs' claims are barred by the three-year Delaware statute of limitations.[14]

---

[14]Because I have determined that the Plaintiffs' complaint should be dismissed as barred by the
Delaware statute of limitations, I need not consider the Defendants' other arguments in support of the
Motions to Dismiss.

Conclusion

For the reasons stated herein, the Plaintiffs' Motion for Remand or Abstention will be denied and the Defendants' Motions to Dismiss will be granted.  An appropriate order follows.

BY THE COURT:

KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: August 11, 2010

20